IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

TRACY A. ALSTATT, )
  )
  Plaintiff, )
  )
  ) CIV-13-675-HE
v. )
  )
CAROLYN W. COLVIN, )
  Acting Commissioner of Social )
  Security Administration, )
  )
  Defendant. )

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his applications for disability insurance and supplemental security income benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

Plaintiff filed his applications on November 13, 2009 (protective filing date), and alleged that he became disabled on June 1, 2009. (TR 164-165, 167-168, 206). Plaintiff was

1

34 years old at that time, and he alleged he was disabled due to depression, anxiety, heart trouble, low intellectual functioning, learning disability, and back trouble. (TR 210). Plaintiff had previously worked as a farm laborer and welder's helper. (TR 211, 217). Plaintiff also had two short-term, unsuccessful work attempts in 2010. (TR 283).

Plaintiff underwent a consultative physical examination conducted by Dr. Maldonado in February 2010. (TR 329-336). Dr. Maldonado reported that Plaintiff exhibited essentially normal physical abilities and no physical impairment. Plaintiff underwent a consultative psychological evaluation conducted by Dr. Danaher, Ph.D., in February 2010. In intelligence testing, Dr. Danaher reported that Plaintiff exhibited a verbal intelligence quotient ("IQ") of 69, performance IQ of 72, and full scale IQ of 67. Dr. Danaher opined that Plaintiff's level of intellectual functioning fell within the borderline range given his history, clinical presentation, and test results.

Plaintiff's medical record reflects that he has been treated for high blood pressure. Dr. Sirajuddin, a cardiologist, evaluated Plaintiff in February 2009 and prescribed medication for hypertension. TR 463-464). However, Plaintiff reported to a consultative examiner, Dr. First, in May 2011 that he was not taking the prescribed medication because he could not afford it. (TR 448). In May 2010, Plaintiff was diagnosed with a depressive disorder and an anxiety disorder. (TR 437). At that time, he sought psychiatric treatment at a mental health clinic for suicidal thoughts and possible withdrawal from antidepressant medication. (TR 432, 435). Plaintiff was diagnosed with major depressive disorder, recurrent, by Dr. Hake in May 2010. (TR 419).

In June 2010 through October 2010, Plaintiff was prescribed four antidepressant and mood stabilizing medications by Dr. Hake. (TR 421-424). Plaintiff reported to a case manager at his treating clinic in September 2010 that the medications were helping him. (TR 406). In October 2010, Plaintiff reported to Dr. Hake that his unemployment benefits had run out and he guessed he was "going to have to go back to work [doing] something [he] can do." (TR 405).

Plaintiff testified at a hearing conducted before Administrative Law Judge Levine ("ALJ") on April 19, 2011 (TR 30-72), and a medical expert ("ME"), Dr. Barrett, and a vocational expert ("VE") also testified.

The ALJ issued a decision in December 2011. Following the agency's well-established sequential evaluation procedure, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 1, 2009, his alleged disability onset date. (TR 14). At step two, the ALJ found that Plaintiff had severe impairments due to borderline intellectual functioning, learning disability, major depressive disorder, and anxiety disorder. (TR 14).

At the third step, the ALJ found that Plaintiff's impairments did not meet or equal the medical requirements of a listed impairment. (TR 17-19). With respect to Plaintiff's mental impairments, the ALJ found that Plaintiff's mental impairments had resulted in "moderate" restrictions in activities of daily living, "moderate" impairments in social functioning, "moderate" impairments in concentration, persistence, or pace, and "one or two" episodes of extended decompensation. (TR 18-19). At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform work at the medium exertional level with

3

nonexertional limitations. (TR 19). The ALJ found Plaintiff would be unable to understand, remember, or carry out detailed instructions or interact appropriately with the general public on more than a minimal or superficial level. (TR 19).

Relying largely on the VE's testimony, the ALJ found at step four that Plaintiff was capable of performing his previous job as a park worker/landscape specialist in light of his RFC for work. (TR 22). Alternatively reaching step five of the sequential evaluation procedure, the ALJ found that Plaintiff was capable of performing jobs available in the economy, including the jobs of bakery worker, bench assembler, and electrical accessories/equipment assembler. (TR 23-24). Based on these findings, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review, and therefore the ALJ's decision is the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

II. Standard of Review

In this case, judicial review of the final Commissioner's decision is limited to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination

of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

III. Conflict between DOT and Steps Four and Five Findings

Plaintiff does not challenge the ALJ's findings at steps two and three or the RFC finding at step four. Plaintiff contends that, in light of the RFC finding that he could not understand, remember, and carry out detailed instructions, the ALJ erred in making the step four finding that he could perform his previous job as a park worker/landscape specialist and in making the alternative step five finding that he is capable of performing other work available in the economy. Plaintiff also contends that the ALJ erred in failing to address the conflict in these findings between the VE's testimony and the job descriptions appearing in the Department of Labor's Dictionary of Occupational Titles ("DOT").

At step four of the evaluation process, the ALJ must determine whether the claimant has the capacity to perform any past relevant work. See 20 C.F.R. §§ 404.1520(e), 416.920(e)("If we cannot make a decision based on your current work activity or on medical facts alone, and you have a severe impairment, we then review your residual functional capacity [RFC] and the physical and mental demands of the work you have done in the past. If you can still do this kind of work, we will find that you are not disabled.").

Although the claimant is the "primary source" for vocational information concerning the skill level and demands of the claimant's past work, "in some cases, supplementary or

corroborative information from other sources such as employers, the *Dictionary of Occupational Titles*, etc., [will be considered] on the requirements of the work as generally performed in the economy." SSR 82-62, 1982 WL 31386, * 3. Additionally, in making the determination as to whether a claimant can perform any past relevant work, the agency "may use the services of vocational experts . . . or other resources, such as the 'Dictionary of Occupational Titles,' . . . to obtain evidence" concerning a claimant's past relevant work. 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2).

At step five, "the burden shifts to the Commissioner to show the claimant has the [RFC] to perform other work in the national economy in view of her age, education, and work experience." Fischer-Ross v. Barnhart, 431 F.3d 729, 731 (10th Cir. 2005). "The claimant is entitled to disability benefits only if he is not able to perform other work." Bowen v. Yuckert, 482 U.S. 137, 142 (1987).

The Tenth Circuit Court of Appeals has held that "before an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of nondisability, the ALJ must ask the expert how his or her testimony as to the exertional requirement of identified jobs corresponds with the [DOT], and elicit a reasonable explanation for any discrepancy on this point." Haddock v. Apfel, 196 F.3d 1084, 1087 (10th Cir. 1999). See Hackett v. Barnhart, 395 F.3d 1168, 1175 (10th Cir. 2005)(recognizing that the holding in Haddock applies to "any occupational information"). Recognizing that "[o]ccupational information provided by a VE . . . generally should be consistent with the occupational information supplied by the DOT," the Social Security Administration requires ALJs to

inquire about and resolve any conflicts between a VE's testimony regarding a job and the description of that job in the DOT. SSR 00-4p, 2000 WL 1898704, at 2-4 (Dec. 4, 2000).

In this case, the ALJ elicited vocational testimony at the hearing concerning the exertional and skill demands of Plaintiff's previous jobs. In response to hypothetical questioning, the VE testified that an individual with Plaintiff's RFC for work could perform his previous job as a park worker/landscape specialist and also could perform other jobs available in the economy, including the positions of bakery worker, bench assembler, and electrical accessories/equipment assembler. The VE gave the DOT's identification numbers for these positions, as well as the exertional levels, the SVP, or specific vocational preparation, ratings for the jobs, and the numbers of those jobs available in the economy, but the ALJ did not specifically ask whether the VE's testimony conflicted with the job information contained in the DOT.

Plaintiff contends that the mental limitations in the ALJ's RFC finding for Plaintiff would preclude his performance of all of these jobs. Plaintiff refers to the "SVP" classification for the jobs. The DOT defines the vocational preparation needed to perform a job by classifying jobs into specific vocational preparation, or SVP, levels. An SVP rating of two involves unskilled work "which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568 (a); SSR 00-4p, 2000 WL 1898704, at *3 ("[U]nskilled work corresponds to an SVP of 1-2."). All of the jobs identified by the VE had an SVP rating of two.

Plaintiff refers to the SVP ratings for the jobs identified by the VE, but Plaintiff quotes

7

the reasoning classifications for those jobs as set forth in the DOT. The DOT states that a job with a reasoning level of 2 requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." DOT, Vol. II, App. C at 1011. The park worker, bench assembler, and electrical accessories assembler jobs identified by the VE had a reasoning level of 2. DOT 406.687-010 (park worker/landscape specialist); DOT 706.684-042 (bench assembler); DOT 729-687-010 (electrical accessories assembler). It is not at all clear that this reasoning level was inconsistent with the ALJ's RFC finding. In Hackett v. Barnhart, for instance, the Tenth Circuit held that a limitation "for simple and routine work tasks" was consistent with the demands of level-two reasoning. Hackett, 395 F.3d 1168, 1176 (10th Cir. 2005).

One of the jobs identified by the VE, the job of bakery worker, has the most basic reasoning-level demands, requiring only a "commonsense understanding to carry out simple one- or two-step instructions." DOT, Vol. II, App. C ,at 1011; DOT 524.687-022 (bakery worker). Thus, even if the mental limitations included in the ALJ's RFC finding would preclude the performance of the park worker, bench assembler, and electrical accessories assembler positions, there is nothing in the RFC finding that would preclude the performance of the bakery worker position. Plaintiff does not address the bakery worker position in his Reply Brief, even though the Commissioner argued in the Response Brief that this position, if not the other positions, would still be available given the narrow interpretation of the DOT's job classifications posed by the Plaintiff in his argument in the Opening Brief.

Under these circumstances, the ALJ's failure to inquire at the hearing concerning

conflicts between the DOT's job information and the VE's testimony was harmless. Poppa v. Astrue, 569 F.3d 1167, 1173-74 (10th Cir. 2009). For these reasons, and because there is substantial evidence in the record to support the Commissioner's step four or alternative step five decision, the Commissioner's decision should be affirmed.

RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before April 23rd, 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this 3rd day of April, 2014.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE